# United States Court of Appeals for the Federal Circuit

05-3254

MICHELLE GOODEN,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

John S. Evangelisti, of Denver, Colorado, argued for petitioner.

John S. Groat, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Brian M. Simkin, Assistant Director.

Appealed from:    United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3254

MICHELLE GOODEN,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED: November 27, 2006

_____

Before MAYER, GAJARSA, and LINN, Circuit Judges.

LINN, Circuit Judge.

Michelle Gooden ("Gooden") petitions for review of the initial decision of the administrative judge ("AJ") for the Merit Systems Protection Board ("Board"), Gooden v. Office of Pers. Mgmt., No. DE-844E-03-0456-I-1 (M.S.P.B. Nov. 28, 2003) ("Initial Decision"), which became the final decision of the Board after it denied Gooden's petition for review, Gooden v. Office of Pers. Mgmt., No. DE-844E-03-0456-I-1 (M.S.P.B. May 4, 2005) ("Final Decision"), affirming a denial of her application for disability benefits by the Office of Personnel Management ("agency"). Because the Board's decision is contrary to the language of the governing statute and regulations and results in an error going to the heart of the administrative process, we reverse and remand.

## I.  BACKGROUND

The facts of this case are largely undisputed.  Gooden was a City Letter Carrier with the U.S. Postal Service in Littleton, Colorado.  <u>Initial Order</u>, slip op. at 7.  Prior to receiving a disabling injury, Gooden had attendance problems, and on November 27, 2001, the Postal Service proposed removal for unsatisfactory attendance.  <u>Id.</u>, slip op. at 8.  Gooden entered into a "last chance" settlement agreement to resolve the proposed removal.  <u>Id.</u>

Gooden suffers from degenerative disk disease, spinal stenosis, and posterior facet anthropathy.  <u>Id.</u>, slip op. at 7.  Due to a job-related injury on November 30, 2001, she became disabled from performing the duties of a City Letter Carrier, which included the ability to (1) sort mail into delivery sequence; (2) deliver mail along prescribed routes either on foot or by vehicle, on a regular schedule; (3) deliver all mail parcels to designated addresses; and (4) accept, collect, and deliver all classes of mail.  <u>Id.</u>, slip op. at 7-8.  Gooden filed a workers compensation claim, was referred to a doctor, and returned to work in January 2002 with light duty restrictions that included intermittent lifting of less than five pounds and intermittent standing, walking, and sitting of no more than 2-3 hours.  <u>Id.</u>, slip op. at 9.  Gooden was assigned sedentary duties such as filing and answering telephones, and she requested no further accommodations.  <u>Id.</u>, slip op. at 9-10.

On March 4, 2002, Gooden was informed that her workers compensation claim had been denied and the light duty job was withdrawn.  <u>Id.</u>, slip op. at 10.  The Postal Service advised Gooden that if she was unable to assume the full duties of her position, she had the following options: (1) apply for temporary light duty if the disability was

temporary in nature; (2) apply for permanent light duty if the disability was permanent; (3) apply for disability retirement; or (4) request accommodation through the Postal Service Reasonable Accommodation Committee (the "accommodation committee").  Id.

Gooden filed a grievance with the Postal Service requesting a return to work with appropriate restrictions.  In June 2002, Gooden's neurologist restricted Gooden to working no more than four hours a day for four weeks with the following limitations: (1) no lifting more than ten pounds; (2) no standing more than four hours a day, with hourly breaks; (3) no walking more than two hours a day; (4) no operating a motor vehicle; and (5) no stooping, reaching above the shoulders, or frequent bending.  Id., slip op. at 11. These restrictions, including the four-hour work day, were later extended.  Id.  On July 8, 2002, Gooden returned to work as a City Letter Carrier and "cased mail."  The official physical requirements of "casing mail" exceeded Gooden's restrictions.

Gooden occasionally failed to complete a four-hour work day, leaving early at times to do "other things" and at times because she was unwell.  As a result, Gooden received a notice of proposed removal for violating the last chance settlement agreement, which allowed for no more than six unscheduled absences in a year.  Id., slip op. at 12.  Removal was effective November 15, 2002.  Id., slip op. at 8.

On December 4, 2002, the accommodation committee sent Gooden a Notice to Employees Seeking Disability Retirement (the "December 2002 letter").  The December 2002 letter informed Gooden that the Postal Service was obligated to provide reasonable accommodation to permit her to perform the essential functions of her position.  It also informed Gooden that, should reasonable accommodation not be possible, she had the right to request reassignment to a vacant position subject to the

05-3254                                         3

terms of applicable collective bargaining agreements.  The December 2002 notice also

enclosed a form that could be returned, which is reproduced below:

> If no request is received within 10 (ten) working days from receipt of this notice, the Postal Service will assume you do not wish to be considered for reasonable accommodation.
>
> __ Yes, I would like to be considered for reasonable accommodation under the Rehabilitation Act.
>
> __ No, I am not requesting reasonable accommodation and wish to proceed with my disability retirement application without delay.
>
> _____    _____
> Signature                          Date

Gooden did not respond.  On January 6, 2003, the accommodation committee again

sent the same form to Gooden; Gooden then returned the form with the second option

selected.  On January 9, 2003, Gooden filed an application for a disability retirement

annuity under the Federal Employees Retirement System ("FERS").  Id., slip op. at 6.

The agency denied Gooden's application on July 29, 2003.  Id.

Gooden appealed the agency's denial to the Board.  In an initial decision, the AJ

affirmed the agency's decision.  Id., slip op. at 15.  The AJ noted that

> To qualify for disability retirement benefits under FERS, [Gooden] must establish that: (1) she has completed more than 18 months of creditable civilian service; (2) while employed in a position subject to FERS, she has become disabled because of a medical condition resulting in a deficiency in performance, conduct, or attendance, or, if there is no such deficiency, the disabling medical condition is incompatible with either useful and efficient service or retention in the position; (3) the disabling medical condition is expected to continue for at least one year from the date the application for disability retirement is filed; (4) accommodation of the disabling medical condition in the position is unreasonable; and (5) she has not declined a reasonable offer of reassignment to a vacant position.

Id., slip op. at 6-7 (citing 5 U.S.C. § 8451; 5 C.F.R. § 844.103(a); Wilkey Marzin v. Office

of Pers. Mgmt., 82 M.S.P.R. 200 (1999); Smith v. Office of Pers. Mgmt., 88 M.S.P.R. 35

(2001)). The AJ concluded that Gooden had successfully proven the first three requirements. Id., slip op. at 14. The fourth and fifth requirements are at issue on appeal and are termed, respectively, as the "accommodation" and "reassignment" requirements. The AJ found that both the "accommodation" and "reassignment" requirements were not met, reasoning that because Gooden had not requested accommodation after being invited to do so, she could not prove that the Postal Service was in fact unable to accommodate her. Id., slip op. at 15. The Board denied review and the decision became final. Final Order, slip op. at 2. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

### A. Standard of Review

This court is without authority to review the substantive merits of disability determinations, or the factual underpinnings of such determinations. Lindahl v. Office of Pers. Mgmt., 470 U.S. 768, 791 (1985). Rather, review is limited to determining "whether there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative process.'" Id. (quoting Scroggins v. United States, 397 F.2d 295, 297 (Ct. Cl. 1968)).

### B. The "Accommodation" Requirement

Gooden argues that the AJ erred in requiring Gooden to request accommodation in order to prove that accommodation of her disability in the position of City Letter Carrier was unreasonable. Gooden argues that the AJ's findings themselves demonstrate that accommodation was unreasonable by finding that the position

required certain essential duties, that Gooden's disability prevented her from performing those essential duties, and that due to Gooden's restrictions, there was no accommodation that would allow her to perform the essential duties. Gooden therefore argues that we should reverse the Board's decision and hold that Gooden has proven that accommodation of her disability in the position was unreasonable.[1]

The government does not directly respond to this issue. Indeed, the government appears to concede that accommodation was not possible, stating that: "Given the apparently undisputed fact that 'medical problems prevented [Gooden] from performing full-time (8 hours a day) the essential duties of a city letter carrier,' it [sic] unclear how the USPS could have made a satisfactory accommodation to permit her to continue to perform the duties of her official position." Rather, the government argues that Delceg v. Office of Personnel Management, 100 M.S.P.R. 467 (2005), requires a factual determination "of the availability of accommodation," which the AJ did not make. The government therefore argues that we should vacate the Board's decision and remand for such a determination.

As the government acknowledges, the basis for the AJ's determination that Gooden failed to prove the "accommodation" requirement is that Gooden never requested accommodation. See Initial Order, slip op. at 15. With respect to accommodation, the relevant regulations provide only that in order to receive a disability annuity, an individual must show that "[a]ccommodation of the disabling medical

---

[1] Gooden argues in the alternative that if requesting accommodation is a prerequisite to applying for disability retirement, the Postal Service failed to notify her of this requirement, but she nevertheless met the requirement by her submission of medical restrictions. Because we conclude that requesting accommodation is not a prerequisite to applying for disability retirement, we do not reach the merits of Gooden's alternative argument.

05-3254                                             6

condition in the position held must be unreasonable." 5 C.F.R. § 844.103(a)(4). We find no basis in the relevant statutes or regulations for requiring an applicant for disability benefits to request accommodation. We also find no basis for such a requirement in either the Board's precedent or our own. See, e.g., Thomas v. Office of Pers. Mgmt., 54 M.S.P.R. 686, 691 (1992) (finding accommodation unreasonable by looking to the medical evidence and comparing it to the job requirements with no indication that accommodation was requested). Indeed, Schwaier v. Office of Personnel Management, 61 M.S.P.R. 49 (1994), the only authority cited by the AJ as support for her conclusion, does not require an applicant for disability benefits to request accommodation. Rather, the Board in Schwaier held that the fact that an applicant was no longer an employee is not evidence establishing that an agency was unable to accommodate the employee at the time of his removal. Id. at 53. We therefore conclude that the AJ erred in requiring Gooden to request accommodation in order to prove that accommodation was unreasonable.

We also conclude that the undisputed facts establish that Gooden has proven that accommodation in her position as City Letter Carrier was unreasonable. The statute governing entitlement to disability retirement under FERS provides that an employee shall be considered disabled only if the employee is unable "to render useful and efficient service in the employee's position." 5 U.S.C. § 8451(a)(1)(B). The pertinent regulation provides that "[a]ccommodation of the disabling medical condition in the position held must be unreasonable," 5 C.F.R. § 844.103(a)(4), and accommodation is defined as "a reasonable adjustment made to an employee's job or work environment that enables the employee to perform the duties of the position," id. § 844.102

(emphasis added). The statute and regulation make clear that accommodation requires adjustments that allow an employee to continue to perform her official position. We have held that a "light-duty" assignment which does not involve the critical or essential elements of an employee's official position cannot be considered an "accommodation" according to the regulations. See Bracey v. Office of Pers. Mgmt., 236 F.3d 1356, 1360-61 (Fed Cir. 2001) (holding that accommodation under the Civil Service Retirement System regulations requires an adjustment that enables an employee to perform the duties of his official position, not "light-duty" assignments crafted in response to medical restrictions); Marino v. Office of Pers. Mgmt., 243 F.3d 1375, 1377-78 (Fed. Cir. 2001) (applying Bracey to FERS regulations). Here, the AJ found that it was "undisputed that [Gooden's] medical problems prevented her from performing full-time (8 hours a day) the essential duties of a city letter carrier, her official position of record." Initial Order, slip op. at 14 (emphasis added). It is also undisputed that—even with adjustment—performing the duties of her official position full-time would exceed the restrictions provided by Gooden's neurologist. See id., slip op. at 8, 11. Instead, Gooden received a light duty assignment consistent with the neurologist's restrictions. Id., slip op. at 11. Because Gooden was incapable of performing the "essential duties" of her official position at the time of her removal, and because light duty assignment does not involve the "critical or essential elements" of a City Letter Carrier and thus cannot qualify as an accommodation according to the regulations, the undisputed facts demonstrate that Gooden has proven that accommodation was unreasonable.

The Board's decision in Delceg does not require any further factual inquiry. In Delceg, the Board correctly noted that in order to qualify for disability benefits under

FERS, an employee must establish that five requirements have been met, citing 5 U.S.C. § 8451 and 5 C.F.R. § 844.103(a). 100 M.S.P.R. at 471. The Board determined that the "reassignment" requirement was satisfied. Id. at 472 ("[T]here is no evidence in the record that the appellant declined a reasonable offer of reassignment to a vacant position."). However, in the context of examining the "accommodation" requirement, the Board evaluated "whether the appellant was qualified for reassignment to a vacant position." Id. at 475 (emphasis added). The Board apparently found such an inquiry was required by its precedent. See id. at 473 (citing Dunn v. Office of Pers. Mgmt., 60 M.S.P.R. 426, 432 (1994)). That inquiry, however, is required by the Civil Service Retirement System ("CSRS"), not FERS. Compare 5 U.S.C. § 8337(a) (with respect to CSRS: "Any employee shall be considered to be disabled only if the employee is found by the Office of Personnel Management to be unable, because of disease or injury, to render useful and efficient service in the employee's position and is not qualified for reassignment . . . ." (emphasis added)) with 5 U.S.C. § 8451(a)(1)(B) (with respect to FERS: "For purposes of this subsection, an employee shall be considered disabled only if the employee is found by the Office to be unable, because of disease or injury, to render useful and efficient service in the employee's position."); see also Dunn, 60 M.S.P.R. at 431-32 (citing 5 U.S.C. § 8337(a) as support for the requirement that an employee must show "he was not qualified for reassignment"). There is simply no statutory or regulatory support for such a requirement in FERS. See 5 U.S.C. § 8451; 5 C.F.R. § 844.103. Although similarities between the two retirement systems often dictate similar constructions of similar terms, there is no basis in this case for importing such a requirement from CSRS into FERS where FERS is silent. Thus, the Board's

inquiry in <u>Delceg</u> into whether the appellant was qualified for <u>reassignment</u> to a vacant position in the context of analyzing whether the appellant had proven that <u>accommodation</u> was unreasonable under 5 C.F.R. § 844.103(a)(4) was an improper inquiry. <u>See</u> <u>Bracey</u>, 236 F.3d at 1360-61 (defining "accommodation" under CSRS regulations as an adjustment enabling employee to perform the duties of his official position, not <u>reassignment</u> to an accommodated position); <u>Marino</u>, 243 F.3d at 1377-78 (applying <u>Bracey</u> to FERS regulations).

Because the AJ improperly required Gooden to request accommodation in order to prove that accommodation was unreasonable, and because the undisputed facts otherwise demonstrate that Gooden has proven that accommodation was unreasonable, the Board's decision is contrary to the language of the governing statute and regulations and results in an error going to the heart of the administrative process. Accordingly, we reverse the AJ's finding that Gooden failed to prove that the "accommodation" requirement was met.

### B.  The "Reassignment" Requirement

Gooden argues that the AJ erred in concluding that she did not prove that she "has not declined a reasonable offer of reassignment to a vacant position" as required by 5 C.F.R. § 844.103(a)(5).  Gooden argues that the Postal Service made no offer of reassignment and, as a result, there was no offer for her to decline.  Gooden requests that we reverse the Board's decision and hold that Gooden has proven that she did not decline a reasonable offer of reassignment.

The government concedes that the AJ did not find that Gooden declined an offer of reassignment, but rather rested its decision on Gooden's failure to request

accommodation. The government, however, argues that Gooden's failure to respond to the accommodation committee's December 2002 letter could be construed as declining a reasonable offer of reassignment. Thus, the government argues that we should vacate the Board's decision and remand for such a determination.

The AJ held that Gooden failed to prove the "reassignment" requirement without any substantive explanation. See Initial Order, slip op. at 15. In conclusion, the AJ stated only that "the appellant has not proven . . . that a reasonable offer of reassignment could not have been made in which she would have been able to render useful and efficient service." Id. (emphasis added) The relevant statute, however, provides that "an employee shall not be eligible for disability retirement under this section if the employee has declined a reasonable offer of reassignment to a vacant position." 5 U.S.C. § 8451(a)(2)(A) (emphasis added). This is mirrored in the relevant regulation, which provides that in order to receive a disability annuity, an individual must show that "[t]he individual must not have declined an offer of reassignment to a vacant position." 5 C.F.R. § 844.103(a)(5) (emphasis added). Thus, with respect to reassignment, the relevant statute and regulation only require an applicant for disability benefits to demonstrate that she did not decline a reasonable offer of reassignment; the statute and regulations do not require an applicant to demonstrate that a reasonable offer of reassignment could not have been made. We therefore conclude that, to the extent the AJ required Gooden to prove that a reasonable offer of reassignment could not have been made, the AJ was in error.

We also conclude that the undisputed facts establish that Gooden has proven that she did not decline a reasonable offer of reassignment. It is undisputed that

05-3254                                    11

Gooden did not receive any actual offers of reassignment, and therefore did not decline such offers of reassignment. Instead, the government argues that the December 2002 letter asking whether Gooden would like to request accommodation, coupled with Gooden's failure to respond, can be considered a denial of an offer for reassignment. The problem with the government's argument is that it apparently requires Gooden to request accommodation (or presumably reassignment) in order to prove that she met the "reassignment" requirement of 5 U.S.C. § 844.103(a)(5); as discussed above, the statute and regulation only require that Gooden demonstrate that she did not decline an offer of reassignment. See 5 U.S.C. § 8451; 5 C.F.R. § 844.103. Indeed, it would appear that the burden in this case was on the Postal Service to consider whether Gooden qualified for reassignment, and if so, to make an offer. See 5 U.S.C. § 8451(a)(2)(B) ("An employee who is applying for disability retirement under this subchapter shall be considered for reassignment by the employee's agency to a vacant position . . . ."); 5 C.F.R. § 844.103(b) ("The agency must certify to the Office of Personnel Management (OPM) either that there is no vacant position or that, although it made no offer of reassignment, it considered the individual for a vacant position."). The fact that Gooden did not request that the Postal Service make an offer of reassignment does not negate the fact that no offer of reassignment was made or declined.

Because the AJ improperly required Gooden to demonstrate that a reasonable offer of reassignment could not be made, and because the undisputed facts otherwise demonstrate that no offer of reassignment was declined, the Board's decision is contrary to the language of the governing statute and regulations and results in an error

going to the heart of the administrative process. Accordingly, we reverse the AJ's finding that Gooden failed to prove that the "reassignment" requirement was met.

## III. CONCLUSION

Based on our analysis of the FERS disability retirement scheme, we are satisfied that Gooden has proven that she is qualified for disability benefits. We therefore reverse the Board's decision and remand the case with instructions to grant Gooden the appropriate disability retirement benefit. In closing, we observe that some of the confusion in the processing of Gooden's request for disability retirement benefits may be attributed to the fact that the December 2002 letter and the attached form do not clearly distinguish between accommodation as it pertains to current employees, and the accommodation and reassignment factors that pertain to employees who may have been dismissed from government service for reasons unrelated to any disability. The government may wish to review and revise those documents to avoid further confusion.

## REVERSED AND REMANDED.

## COSTS

Costs to Gooden.